
IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2021 Session

### IN RE AZHIANNE G.

**Appeal from the Circuit Court for Anderson County**
**No. B8LA0042                M. Nichole Cantrell, Chancellor**

_____

**No. E2020-00530-COA-R3-JV**
_____

The trial court found that the minor child, Azhianne G. ("the Child"), was dependent and neglected in his mother's care. The trial court also determined that the Child had been severely abused based upon his disclosures of sexual abuse perpetrated by his mother. The mother has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

L. Rosillo Mulligan, Harriman, Tennessee, for the appellant, Barresha T.

Herbert H. Slatery, III, Attorney General and Reporter, and Amber L. Seymour, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

I.  Factual and Procedural Background

On May 9, 2017, the Tennessee Department of Children's Services ("DCS") filed a petition in the Anderson County Juvenile Court ("juvenile court"), concerning the Child. The Child's mother, Barresha T. ("Mother"), and the Child's father, Shaunlee G. ("Father"), were named as respondents.[1] In its petition, DCS sought to transfer legal custody of the Child to his maternal aunt and uncle due to allegations that the Child was dependent and neglected in Mother's care. DCS alleged in the petition that the parents

---

[1] Father is not participating in this appeal; therefore, we will confine our analysis solely to allegations concerning Mother.

did not live together and that the Child resided primarily with Mother and periodically visited with Father.

DCS asserted in its petition that it had received a referral on April 28, 2017, concerning allegations that the Child, who was four years of age at the time, was the victim of sexual abuse. DCS conducted a forensic interview with the Child on May 1, 2017, during which the Child made graphic disclosures of sexual abuse perpetrated by Mother. DCS also asserted that there had been allegations of substance abuse by Father. The juvenile court entered a protective custody order on May 15, 2017, placing the Child in the custody of his maternal aunt and uncle and enjoining the parents from contact with the Child.

The juvenile court subsequently appointed counsel for Mother and a guardian *ad litem* for the Child. Following the juvenile court judge's recusal due to a conflict of interest, Judge Darryl Edmondson, sitting by interchange, entered a preliminary hearing order, wherein he stated that Mother had waived her right to such hearing. Although Mother subsequently filed a motion seeking permission for the Child to testify in the matter, DCS and the guardian *ad litem* opposed such action, arguing that it would subject the Child to further trauma. The parties later acquiesced to entry of an agreed order declaring that the Child would not testify.

On February 23, 2018, the juvenile court conducted an adjudicatory and severe child abuse hearing with Judge Edmondson presiding. The juvenile court subsequently entered an order on March 8, 2018, determining that the Child was dependent and neglected as to both Mother and Father. The juvenile court further found that Mother had perpetrated severe child abuse upon the Child and that Father had failed to protect the Child from such abuse. Mother appealed the juvenile court's ruling to the Anderson County Circuit Court ("trial court").

Shortly thereafter, Mother's counsel withdrew from representation of Mother due to his relocation, and the trial court appointed new counsel for Mother. Mother's new counsel filed a motion on September 10, 2018, seeking the trial court's approval for an allocation of funds with which to hire an expert to testify on Mother's behalf. The trial court allocated funds to permit Mother to hire Dr. Diana McCoy as an expert witness. Mother subsequently requested that the trial court enter an order compelling DCS to allow Dr. McCoy to interview the Child. The guardian *ad litem*, however, opposed such an interview as potentially detrimental to the Child. On April 12, 2018, the trial court entered an order directing that the Child would be interviewed by an independent forensic evaluator so that no allegations of bias could be made.

On October 11, 2019, Mother filed a second motion seeking the trial court's approval to allow Dr. McCoy to interview the Child. In this motion, Mother stated that DCS had been unable to locate an independent forensic evaluator who was willing to

conduct the interview. The guardian *ad litem* again opposed Mother's request. The trial court subsequently entered an order stating that Dr. McCoy could rely on the Child's therapy notes and/or treatment records in order to evaluate the Child's communication skills and cognitive capabilities, but the court denied Dr. McCoy the opportunity to interview the Child. The trial court found that the threat of harm to the Child was too great and that conducting such an interview would not be in the Child's best interest. Mother then filed a motion seeking to have the Child's initial forensic interview excluded as evidence; however, the trial court denied her request.

The trial court conducted a *de novo* hearing on February 20 and 21, 2020, concerning Mother's appeal of the juvenile court's adjudicatory order. In its final order entered March 5, 2020, the trial court noted that the parties had stipulated to the expert qualifications of both Dr. McCoy and the Child's therapist, Helen Lyle Joiner, at the outset of the hearing. The trial court recounted the testimony of numerous witnesses in the order, including the original DCS forensic interviewer, Miranda McKeehan, whom the court found to be a credible witness. The court also viewed a video recording of the Child's forensic interview and found that the Child's disclosures of abuse were spontaneous and unsolicited.

As the trial court noted in its order, testimony established that the Child suffered from severe behavioral issues, including aggression, sexualized behavior, and violence toward other persons and animals. The DCS family services worker assigned to the Child explained that by the time of trial, the Child had lived in various foster homes that had not "worked out" such that the Child was currently living in a residential placement facility, Inner Harbor. Ms. Joiner, the Child's treating therapist, testified that the Child made disclosures of sexual abuse to her during their sessions that were graphic and detailed. Ms. Joiner opined that the Child's disclosures were credible and consistent, and the trial court found Ms. Joiner to be a credible witness. The trial court ultimately determined that the Child was the victim of severe child abuse at the hands of Mother and also that the Child was dependent and neglected in Mother's care. Mother timely appealed to this Court.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated and reordered slightly:

1.   Whether the trial court erred by allowing the recorded forensic interview to be entered as substantive evidence of sexual child abuse.

2.   Whether the trial court erred by refusing to allow Mother's expert to interview the Child at his residential placement facility in Georgia.

- 3 -

3.      Whether the trial court erred in determining that clear and convincing evidence established that Mother had sexually abused the Child.

4.      Whether DCS should have explored alternative explanations for the Child's sexually reactive behaviors.

5.      Whether the Child's best interest will be served by continuation of a no-contact order regarding Mother.

## III.  Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). However, "[a]lthough this right is fundamental, and superior to claims of the government and other persons, it is not absolute." *In re H.L.F.*, 297 S.W.3d 223, 232 (Tenn. Ct. App. 2009) (citing *State v. C.H.K.,* 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004)). Considering the fundamental nature of the right involved, "[a] determination that a child is dependent and neglected must be supported by clear and convincing evidence." *See In re Emmalee O.*, 464 S.W.3d 311, 323 (Tenn. Ct. App. 2015) (quoting *In re Kaitlynne D.*, No. M2013-00546-COA-R3-JV, 2014 WL 2168515, at *1-2 (Tenn. Ct. App. May 21, 2014)). "Severe child abuse in a dependency and neglect proceeding must also be established by clear and convincing evidence." *In re S.J.*, 387 S.W.3d 576, 587 (Tenn. Ct. App. 2012). Our Supreme Court has defined clear and convincing evidence as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

## IV. Forensic Interview Recording

Mother contends that the trial court erred by admitting as evidence the video recording of the Child's forensic interview. Prior to trial, Mother had filed a motion seeking exclusion of this evidence, arguing that the Child's statements made therein lacked trustworthiness. Mother asserted, *inter alia*, that the forensic examiner had been unable to ascertain whether the Child knew the difference between truth and fiction and that there was a lack of corroborating evidence. The trial court denied Mother's request, determining that (1) it was the trial court's duty to evaluate the trustworthiness of the disclosures considering the totality of the circumstances and (2) the Child's disclosures were trustworthy because he had made spontaneous and consistent disclosures of sexual abuse perpetrated by Mother to both the forensic examiner and his treating therapist. Upon our thorough review of the record, we agree with the trial court's decision to admit the video recording of the Child's forensic interview as evidence.

In a proceeding involving allegations of severe child abuse wherein this precise evidentiary issue was raised, this Court explained:

> "Trial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence[.]" *Tenn. Dep't of Children's Servs. v. M.S.*, No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *17 (Tenn. Ct. App. Mar. 8, 2005), *perm. app. denied* (Tenn. Aug. 29, 2005) (citing *Rothstein v. Orange Grove Ctr. Inc.*, 60 S.W.3d 807, 811 (Tenn. 2001); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992)). Accordingly, we review a trial court's decision to admit or exclude evidence using an abuse of discretion standard. *In re Spencer E.*, No. M2009-02572-COA-R3-JV, 2011 WL 295896, at *3 (Tenn. Ct. App. Jan. 20, 2011) (citing *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W .3d 121, 131 (Tenn. 2004)). The abuse of discretion standard
>
> > does not permit an appellate court to substitute its judgment for that of the trial court, but "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives, and thus envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal."
>
> *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Med., Inc. v. Beecher*, 312, S.W.3d 515, 524 (Tenn. 2010)).

*In re Madison M*., No. M2013-02561-COA-R3-JV, 2014 WL 4792793, at *3 (Tenn. Ct. App. Sept. 25, 2014). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Statements made by a witness outside of court are generally considered hearsay and are inadmissible pursuant to Tennessee Rules of Evidence 801 and 802. Tennessee Rule of Evidence 803(25), however, provides an exception to the general hearsay rule and allows statements of abuse made by a child under the age of thirteen to be admitted in severe child abuse cases under certain circumstances. Rule 803(25) expressly provides:

The following are not excluded by the hearsay rule:

* * *

(25) Children's Statements. Provided that the circumstances indicate trustworthiness, statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse or neglect, offered in a civil action concerning issues of dependency and neglect pursuant to Tenn. Code Ann. § 37-1-102(b)(12), issues concerning severe child abuse pursuant to Tenn. Code Ann. § 37-1-102(b)(21), or issues concerning termination of parental rights pursuant to Tenn. Code Ann. § 37-1-147 and Tenn. Code Ann. § 36-1-113, and statements about abuse or neglect made by a child alleged to be the victim of physical, sexual, or psychological abuse offered in a civil trial relating to custody, shared parenting, or visitation. Declarants of age thirteen or older at the time of the hearing must testify unless unavailable as defined by Rule 804(a); otherwise this exception is inapplicable to their extrajudicial statements.

In the case at bar, the Child was under thirteen years of age and was alleged to be the victim of sexual abuse in a civil action concerning issues of dependency and neglect and severe child abuse. As such, the trial court could properly allow the Child's statements made in the forensic interview to be admitted as an exception to the hearsay rule so long as the "circumstances indicate[d] trustworthiness." *See* Tenn. R. Evid. 803(25).

With regard to trustworthiness, the Advisory Commission Comments provide that "Courts should carefully consider the motivation of particular minor declarants and also the motivation of some adults to influence children. Also worthy of consideration is the presence or absence of evidence corroborating the hearsay statement. As with all hearsay offered at trial, balancing under Rule 403 is appropriate." Tenn. R. Evid. 803(25) Adv.

Comm'n. Cmt. This Court has further recognized that "[o]ther factors for consideration in assessing trustworthiness may include the circumstances surrounding the statement, such as the child's demeanor and appearance; the time between the statement and the event described; and whether the environment where the statement was made was coercive or suggestive." *See In re Madison M.*, 2014 WL 4792793, at *8 (citing COHEN, TENNESSEE LAW OF EVIDENCE § 8.30[4][a] (5th ed. 2005)).

In *Madison M.*, the trial court was asked by the defendant, the child's stepfather, to exclude the video recording of the five-year-old child's forensic interview, wherein the child had disclosed sexual abuse, based on a lack of trustworthiness. *See* 2014 WL 4792793, at *3. The trial court allowed the video to be introduced as evidence, concluding that it was admissible pursuant to the hearsay exception contained in Tennessee Rule of Evidence 803(25) and that the circumstances indicated trustworthiness. *Id*. at 11-12. On appeal, this Court agreed with the trial court's admission of the evidence, stating:

> [T]the overall circumstances present in this case indicate trustworthiness of Madison's statements and indicate that the circuit court considered all the evidence in determining trustworthiness. . . . We likewise find that Madison was unmistakably clear in communicating the details of the abuse to several people, despite her language impairment. Madison continued to make these consistent statements despite the fact that Mother did not believe her. The settings in which these statements were made were not coercive or suggestive. Madison initially volunteered the information to her teacher in a rather spontaneous manner. Madison made similar statements to a teacher's aide, a school guidance counselor, a forensic interviewer, and a licensed clinical psychologist. The teacher, guidance counselor, and psychologist testified that they were of the opinion that Madison was truthful. These were unbiased parties. Madison was able to give specific details about the abuse, and her description of the event was not inconsistent with any other circumstances. She said it happened at her home, in her bedroom, at "wake up" time. Stepfather was living in the home at that time. Madison was able to demonstrate how it happened and the manner in which she told Stepfather to stop, and she described how Stepfather reacted. . . . There is no suggestion from anyone that Madison has any motivation to be untruthful or invent stories of abuse or that she has been coached or encouraged to fabricate her statements.

> Madison's statements are not rendered untrustworthy simply because there was no eyewitness to the abuse, and no physical evidence to confirm that it occurred. As Tennessee Law of Evidence aptly notes, "In cases involving child abuse or child neglect, the child victim is often the primary source of information about the event at issue. Frequently the critical

occurrence involved only an adult and the child-victim. There were no other direct witnesses." Cohen, § 8.30[2]. Thus, Rule 803(25) "provides a hearsay exception that will ease the ability to prove child abuse or neglect in some situations." *Id*.

Again, the determination of trustworthiness is a matter for the trial judge to decide, and his or her decision will not be disturbed on appeal unless there is a showing of abuse of discretion. We certainly cannot say, in this case, that the circuit court judge abused her discretion in deeming Madison's statements trustworthy, credible, and entitled to significant weight, and therefore admissible pursuant to Rule 803(25).

*In re Madison M.*, 2014 WL 4792793, at *13-14.

Similarly, in the case at bar, the Child made spontaneous disclosures during the forensic interview of sexual abuse by Mother. The Child described the sexual acts and the body parts involved both by touching his own body and by reenacting the acts with dolls. The Child also utilized language that would not be within a typical four-year-old's vocabulary. The Child described when and where the abuse took place, and he never disclosed any perpetrator besides Mother. Although Ms. McKeehan was unable to thoroughly explain the "rules" of the interview to the Child due to his limited attention span, the veracity of his statements and actions is apparent from the spontaneous nature of the disclosures. Ms. McKeehan stated that she had no concerns regarding the veracity of the Child's disclosures and that it was not unusual for younger children to be unable to sit through her entire recitation of the rules.

Following his removal from Mother's home and while participating in individual therapy, the Child made the same spontaneous disclosures concerning Mother to his treating therapist, Ms. Lyle-Joiner. Again, the Child described the sexual abuse in graphic detail, explained when and where it happened, and named only Mother as the perpetrator. The Child's disclosures in therapy remained consistent with the disclosures made during the forensic interview. In fact, the Child made consistent abuse disclosures during several sessions with Ms. Lyle-Joiner despite also telling her that his aunt and grandfather had told him not to talk about Mother. Clearly, the circumstances do not indicate a motivation for the Child to have been untruthful about the sexual abuse because he expressed during one session that he would be punished for talking about it. In addition, there was no evidence demonstrating that the environments where the statements were made were coercive or suggestive in any way.[2]

---

[2] In addition, the DCS investigator testified that his investigation began as the result of a DCS referral from an unnamed source alleging that the Child was being sexually abused by Mother. The DCS investigator also related that when he interviewed Father, Father acknowledged that the Child had previously disclosed potential sexual abuse to Father, although the Child did not name a perpetrator. Father did not report this disclosure at the time it was made.

Ms. Lyle-Joiner, who is an undisputed expert in the treatment of sexual abuse victims, opined that she believed the Child's disclosures to be true because his disclosures were consistent, made in graphic detail, and identified solely Mother as the perpetrator. She reported that the Child was able to describe precisely where and when the abuse occurred and could also relate how it made him feel. Ms. Lyle-Joiner opined that a child who had simply viewed a sexual act would not be able to describe the act as accurately such that the Child's knowledge would corroborate his disclosures of abuse. She further stated that despite working with a number of abused children, she had never heard a child of such a young age utilize the type of language the Child used in his descriptions. Also disturbing was Ms. Lyle-Joiner's account of the Child's stated desire to engage in sexual acts with her, as he similarly expressed during the forensic interview with Ms. McKeehan. Both witnesses related that the Child seemed disappointed by their refusal to engage in sexual activity, and Ms. Lyle-Joiner explained that the Child felt such behavior was normal and seemed to conflate sex with love or bonding.

As the trial court found, "the [Child's] disclosures were spontaneous, credible, and very detailed." The court specifically determined both the forensic examiner and Ms. Lyle-Joiner to be credible witnesses, and the court further found that the disclosures made to each of them were consistent. Following our review of the evidence, we agree and conclude that considering the totality of the circumstances, the trial court did not abuse its discretion in determining the Child's statements made in the forensic interview to be trustworthy.

We further note, as in *Madison M.*, that the Child's statements were not "rendered untrustworthy simply because there was no eyewitness to the abuse, and no physical evidence to confirm that it occurred." *See* 2014 WL 4792793, at *14. In this case, the abuse occurred during a time that only Mother and the Child were present. As such, there could be no other eyewitness. We agree with the trial court's conclusion that the Child's abuse disclosures were admissible pursuant to Tennessee Rule of Evidence 803(25) because the circumstances indicate trustworthiness. We discern no abuse of discretion and therefore affirm the trial court's decision to admit the video recording of the Child's forensic interview.

V. Inability of Mother's Expert to Examine the Child

Mother also argues that the trial court erred by declining to allow her expert, Dr. Diana McCoy, to examine the Child in person. Prior to trial, Mother filed two motions seeking permission for Dr. McCoy to interview the Child. The trial court declined such requests, determining that the threat of harm to the Child was too great and that conducting such an interview would not be in the Child's best interest. The trial court instead ordered that Dr. McCoy could rely on the Child's therapy notes and/or treatment records in order to evaluate the Child's communication skills and cognitive capabilities.

- 9 -

In her appellate brief, Mother asserts that Dr. McCoy "wanted to ascertain the capacity of the child of tender years to comprehend and to tell the truth," which information "would have been valuable to the *de novo* Court in determining the weight of the credibility of the child's out-of-court statements." We note, however, that the trial court did have such information available based on the testimony of Ms. Lyle-Joiner, who completed ten to twelve therapy sessions with the Child at a point in time much closer to the actual abuse events and who opined that the Child was truthful in his abuse disclosures. Mother has cited no authority demonstrating that the trial court's declination of her request constitutes error. We find Mother's argument concerning this issue to be unavailing.

## VI. Severe Child Abuse Determination

Mother posits that the trial court erred in finding by clear and convincing evidence that she had perpetrated severe child abuse upon the Child. DCS contends that the evidence presented at the *de novo* trial was clear and convincing on this point. Upon thorough review of the record and applicable authorities, we agree with DCS.

The trial court found that the Child was dependent and neglected, pursuant to the statutory definition,[3] based in part on its finding that Mother had sexually abused the Child and was therefore guilty of severe child abuse pursuant to Tennessee Code Annotated § 37-1-102(27)(B) and (C).[4] Tennessee Code Annotated § 37-1-102(27)(B) and (C) (Supp. 2020) define "severe child abuse" as:

> (B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function

---

[3] Regarding the statutory reference contained in the trial court's severe child abuse determination, we note that the location of the severe child abuse definitions within the statute changed during the pendency of these proceedings. At the time that DCS's petition was filed, the severe child abuse definitions were codified at Tennessee Code Annotated § 37-1-102(b)(22) rather than subsection (27). *See* Tenn. Code Ann. § 37-1-102 (2016). However, the definitions contained within the subsection have not changed in any manner that would affect the trial court's reliance thereon. In this Opinion, to avoid confusion, we have chosen to utilize the more recent numbering of the definition subsections employed by the trial court in its order.

[4] We note that Mother has not appealed the trial court's determination that the Child was dependent and neglected in her care. Mother has accordingly waived that issue. *See Ethridge v. Estate of Ethridge*, 427 S.W.3d 389, 395 (Tenn. Ct. App. 2013) ("Issues not raised in the statement of the issues may be considered waived.").

- 10 -

adequately in the child's environment, and the knowing failure to protect a child from such conduct;

(C)     The commission of any act towards the child prohibited by § 39-13-309, §§ 39-13-502 -- 39-13-504, § 39-13-515, § 39-13-522, § 39-13-527, § 39-13-531, § 39-13-532, § 39-15-302, § 39-15-402, or § 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child[.]

In this case, the trial court specifically found:

[The Child's] statement[s] regarding his sexual abuse by [Mother] are trustworthy, based upon the findings of this court that his disclosures were spontaneous in nature, credible, and consistent. The disclosures that [the Child] made were detailed in nature; he demonstrated the sexual acts using the Barbie dolls not only at his forensic interview but also during his treatment with Helen Lyle-Joiner. [The Child] used sexually explicit language . . . which [is] not typical language for a four (4) year old child. [The Child] was also able to describe how the sexual acts felt, which distinguishes these acts from something [the Child] may have seen from something [the Child] actually experienced. [The Child's] continued request to have others engage in sexual acts with him and his genuine disappointment when they refused also gives [the Child's] disclosures even more credibility. It is clear to this court that [the Child] has been engaged in sexual behavior with [Mother].

The court finds that the perpetrator of the sexual abuse of [the Child] was [Mother]. [The Child] made no disclosures that any other person other than [Mother] ever engaged in any type of sexual abuse. The court rejects [Mother's] argument that [DCS] failed to consider other alternative theories behind [the Child's] disclosures. [DCS] investigated the only person against which [the Child] ever made any disclosures which is reasonable considering the totality of the circumstances of this case.

(Paragraph numbering omitted.) Based on our thorough review of the evidence, we agree with the trial court.

As explained above, the Child made unprompted, consistent, detailed disclosures of sexual abuse perpetrated by Mother both in his initial forensic interview and later during multiple therapy sessions. Ms. Lyle-Joiner opined that the Child's disclosures were truthful because of their consistency, the graphic descriptions and language utilized by the Child, and the Child's failure to name any other perpetrator. Ms. Lyle-Joiner further opined that the abuse had impaired the Child's ability to function adequately in

- 11 -

his environment and could lead to severe depression or psychosis. Her opinion is supported by the testimony concerning the Child's inability to maintain placement in multiple foster homes due to his aggressive and sexually reactive behaviors. As such, the evidence clearly and convincingly satisfies the requirement for a finding of severe child abuse pursuant to Tennessee Code Annotated § 37-1-102(27)(B).

In addition, Tennessee Code Annotated § 37-1-102(27)(C) defines "severe child abuse" as including the commission of a criminal act toward a child pursuant to various statutes, including Tennessee Code Annotated § 39-13-504. Tennessee Code Annotated § 39-13-504(a) (2018) defines "aggravated sexual battery" as "unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances." One such circumstance listed is "the victim is less than thirteen (13) years of age." *See* Tenn. Code Ann. § 39-13-504(a)(4). This statutory requirement is satisfied by Mother's conduct toward the Child, who was merely four years of age at the time of the abuse.

Mother argues that the evidence of sexual abuse was not clear and convincing, reiterating many of her arguments previously discussed concerning the trial court's denial of her request to allow Dr. McCoy to interview the Child and the court's reliance upon Ms. Lyle-Joiner's testimony, who Mother emphasizes was a treating therapist rather than a forensic evaluator. Mother cites no authority for her contention that Dr. McCoy's expert opinion would carry more weight than that of Ms. Lyle-Joiner, an expert in the treatment of sexual abuse victims and a witness the trial court explicitly found to be credible. Ironically, Mother also seeks to discredit the testimony of Miranda McKeehan, the forensic examiner who initially interviewed the Child, taking issue with the manner in which she conducted the interview. We note, however, that the trial court also determined Ms. McKeehan to be a credible witness and found that the recording of the forensic interview "speaks for itself."

As this Court has previously explained concerning the clear and convincing evidence standard:

> "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re A.T.P.*, No. M2006-02697-COA-R3-CV, 2008 WL 115538, at *4, 2008 Tenn. App. LEXIS 10, at *13-14 (Tenn. Ct. App. Jan. 10, 2008) (citing *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9, 2003 Tenn. App. LEXIS 569, at *26 (Tenn. Ct. App. Aug. 13, 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). The evidence should produce a firm belief or conviction as to the truth of the allegations sought to be established. *In re A.T.P.*, 2008 WL 115538, at *4, 2008 Tenn. App. LEXIS 10, at *14 (citing *In re A.D.A.*, 84 S.W.3d 592,

596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001)). "In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is 'highly probable' as opposed to merely 'more probable' than not." *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005) (quoting *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000)). *See also In re Samaria S.*, 347 S.W.3d [188,] 200 [(Tenn. Ct. App. 2011)]. The appellate court applies the clear and convincing evidence standard as follows:

> Under this standard of proof, the appellate court must "distinguish between the specific facts found by the trial court and the combined weight of those facts." *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007). The facts as found by the trial court are reviewed *de novo* on the record, presuming those findings to be correct unless the evidence preponderates otherwise. *Cornelius* [*v. DCS*], 314 S.W.3d [902,] 906-07 [(Tenn. Ct. App. 2009)]. Findings of fact based on witness credibility are given great deference and will not be disturbed absent clear evidence to the contrary. *Id*. Whether the combined weight of the facts, either as found by the trial court or supported by a preponderance of the evidence, establish clearly and convincingly that the parent committed severe child abuse is a question of law, subject to *de novo* review with no presumption of correctness. *Id*.

*In re Samaria S.*, 347 S.W.3d at 200.

*In re S.J.*, 387 S.W.3d at 587-88.

Based upon our review of the evidence in this matter, we conclude that the combined weight of the facts, as found by the trial court and as supported by a preponderance of the evidence, establish clearly and convincingly that Mother committed severe child abuse by sexually abusing the Child. Due to the Child's age at the time and the consistency and spontaneity of his disclosures of abuse, coupled with his obvious knowledge of terms and feelings associated with sexual acts and body parts and his unwavering identification of Mother as the perpetrator, we conclude that the evidence establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn. *See id*. We therefore affirm the trial court's determination that Mother perpetrated severe child abuse upon the Child in accordance with the definitions contained within Tennessee Code Annotated § 37-1-102(27)(B) and (C).

Furthermore, based on the evidence that DCS had before it concerning the Child's disclosures, we find no fault with DCS's alleged "failure" to explore alternative explanations for the Child's behavior. The Child disclosed only Mother as the perpetrator of his abuse. As such, DCS was under no duty to look to other individuals in an attempt to absolve Mother, and Mother has provided no authority for such proposition. We find Mother's issue in this regard to be without merit.

## VII. No-Contact Order

Finally, Mother asserts that the Child's best interest will not be served by continuation of the no-contact order concerning Mother. In its final order, the trial court ordered that Mother would have no contact with the Child "until recommended by the child's therapist." We conclude that the trial court's order was proper considering the severe child abuse determination.

As this Court has previously explained, "pursuant to Tennessee Code Annotated section 37-1-130, where a child is found to be dependent and neglected, the trial court may make any one of several dispositions of the child 'best suited to the protection and physical, mental and moral welfare of the child.'" *In re Tamera W*., 515 S.W.3d 860, 876 (Tenn. Ct. App. 2016) (quoting Tenn. Code Ann. § 37-1-130(a)). The trial court also has the authority to grant injunctive relief "upon such terms as the court may deem proper" whether at the commencement of the matter, "during the pendency of the matter," or "as part of its dispositional order." *See* Tenn. Code Ann. § 37-1-152 (Supp. 2020). We find no error in the trial court's decision to restrict the Child's contact with Mother, who perpetrated severe child abuse upon the Child, until the Child's therapist recommends otherwise. This issue is also without merit.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed below. Costs on appeal are taxed to the appellant, Barresha T.

s/ Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE